## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,            Criminal Case No. 06-20216

v.                               Civil Case No. 12-15136

                                  HON. DENISE PAGE HOOD

DANIEL JESUS RENDON (D-2),

      Defendant-Petitioner.

_____/

### ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
### TO VACATE, SET ASIDE, OR CORRECT SENTENCE,
### ORDER DISMISSING CIVIL CASE NO. 12-15136
### and
### ORDER DENYING CERTIFICATE OF APPEALABILITY

On October 31, 2007, following a trial by jury, Petitioner Daniel Jesus
Rendon was convicted on the sole charge of Conspiracy to Possess with the Intent
to Distribute Controlled Substance (cocaine). The Court imposed the mandatory
minimum sentence of 120 months against Petitioner. (Doc. No. 132, Judgment,
filed July 15, 2008) Petitioner filed a timely appeal, and the Sixth Circuit Court of
Appeals affirmed this Court's Judgment in an order dated August 26, 2011, with a
mandate issued on February 13, 2012. On November 19, 2012, Petitioner filed the
instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.
(Doc. No. 169) Petitioner contends that his trial counsel was ineffective in
presenting his defense at trial. *Id.* at PgID 3115-73. The Government filed a

response, and Petitioner filed a reply. (Doc. Nos. 177 and 179, respectively)  On April 8, 2014, Petitioner filed a Motion for Consideration of Newly Promulgated Law. (Doc. No. 180)

## I.   BACKGROUND

This case originated from an investigation of an alleged drug trafficking organization involving Alvin Kent Broadnax ("Broadnax"). (Doc. No. 177, PgID 3270)  FBI Agent Richard Wozniak ("Agent Wozniak") testified that, in March of 2002, an informant advised him that Broadnax was a multiple-kilogram cocaine dealer. *Id.* at 3271. Based on that information and subsequent telephone conversations between Broadnax and the informant, the FBI obtained pen register and toll information for its investigation. *Id.*  During the time period from March to November of 2002, toll records and pen register results indicate Broadnax contacted Petitioner 87 times.  *Id.* at 3271-72.

On December 6, 2002, the FBI obtained authority to intercept Broadnax's telephone calls.  150 intercepted calls were deemed pertinent or relevant to the FBI's investigation. *Id.* at 3272. Of those 150 intercepted calls, nineteen were used at trial, including Call 52 ("Call 52"), a December 6, 2002 call between Broadnax and Petitioner. *Id.* On December 17, 2012, based on the intercepted calls, the Detroit Police Department executed search warrants on two houses where

2

Broadnax was storing cocaine and seized approximately 640 grams of the substance. *Id.*

In June of 2003, Agent Wozniak interviewed Petitioner at Petitioner's home. *Id.* at 3272-73. Petitioner admitted he had been introduced to Broadnax by co-defendant Chris Bevelle ("Bevelle"). *Id.* at 3273. Agent Wozniak played some of the telephone calls intercepted during the wiretap of Broadnax's telephone. *Id.* Petitioner initially denied that it was his voice on the calls, but after one of the calls was played a second time, he conceded it was his voice. *Id.* When asked what he meant by a "whole one" in one of the calls, Petitioner stated that he was referring to a pound of marijuana. *Id.* In response to a question about his reference to "5 of those" in Call 52, Petitioner stated he was referring to five pounds of marijuana. *Id.* When asked if he ever provided Broadnax cocaine or crack cocaine, Petitioner responded that he never provided Broadnax crack. *Id.* After Agent Wozniak informed him of the December 17, 2002 cocaine bust, Petitioner asked if he needed a lawyer and the interview ended. *Id.*

Petitioner was indicted on April 26, 2006 on one count of Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 and § 841(a), and two counts of Criminal Forfeitures under 21 U.S.C. § 853.

On June 29, 2006, Petitioner pleaded not guilty. Petitioner and co-defendant Bevelle were tried together before two separate juries in October 2007.

At trial, Petitioner's counsel cross-examined Agent Wozniak regarding the affidavits supporting the FBI wiretap applications. *Id.* at 3274. The testimony connected Petitioner as a source of cocaine for the unrelated "Calderone Drug Organization" ("Calderone Organization"). *Id.*; Doc. No. 158, PgID 1811-1852.

Broadnax, who had pled guilty and was serving a 43-month sentence (reduced from a guideline range of 87-108 months) for his role in the conspiracy, was called to testify by the Government. (Doc. No. 177, PgID 3275; Doc. No. 159, PgID 1997-2092) Broadnax testified that he began selling cocaine in the summer of 2000 due to financial distress caused by his unemployment and the needs of his handicapped child. *Id.* During Broadnax's testimony, the Government played the nineteen calls it had introduced into evidence through Agent Wozniak. *Id.* at 3276. One of those calls was Call 52, on which Broadnax and Petitioner discussed a discrepancy regarding what Broadnax claimed to have been five kilograms of cocaine that Broadnax took from Petitioner's van. *Id.*

During her cross-examinations of both Agent Wozniak and Broadnax, Petitioner's counsel tried to ask about Broadnax's criminal history. (Doc. No. 177, PgID 3275) The Government objected in each instance, and the Court sustained

4

both objections. *Id.* At trial, Bevelle's counsel explored the terms of Broadnax's plea deal in detail (*see, e.g.*, Doc. No. 159, PgID 2183-2203), and the Government mentioned Broadnax's plea deal during its closing. (Doc. No. 163, PgID 2871-72)

After a two week trial, Petitioner was found guilty on October 31, 2007. (Doc. No. 80)

## II.   LEGAL STANDARD

28 U.S.C. § 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). A defendant seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). When raising claims alleging errors of constitutional magnitude, a defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Further, relief under § 2255 requires a showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. U. S.*, 417 U.S. 333, 346 (1974).

5

## III.   ANALYSIS

### A.   Applicable Law

Under the Sixth Amendment, a defendant has a right to "have the assistance of counsel for his defense." U.S. Const. Amend. VI. A defendant under the Sixth Amendment has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test for ineffective counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id*. "There is a strong presumption that legal counsel is competent," *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), and "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). Further, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

6

circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

### B.    Analysis Regarding 2255 Motion

Petitioner argues his trial counsel was ineffective because: (1) when cross-examining a witness, she introduced inadmissible evidence against her client (*i.e.*, evidence of the Calderone Organization); (2) she failed to impeach Broadnax, the Government's "chief" witness, with respect to two prior misdemeanors; (3) she failed to impeach Broadnax's testimony regarding the needs of his handicapped son and Broadnax's suggestion that he was a first-time offender; (4) she failed to investigate the circumstances regarding Call 52; and (5) she failed to object to "vouching" by the Government with respect to Broadnax.

### 1.    Counsel's Cross-Examination of Agent Wozniak

Petitioner claims that his counsel's cross-examination of Agent Wonziak demonstrated that she did not "reasonably inform[] herself as to the admissibility of information" under Federal Rules of Evidence 401, 402, 403, 801, and 802. (Doc. No. 169, p. 18). Specifically, Petitioner argues that his counsel's error

resulted in the introduction of inadmissible testimony that identified Petitioner as a drug supplier to the Calderone Organization. *Id.* at 21. The Government claims Petitioner's counsel, who expected the Government to introduce this evidence, strategically introduced the testimony to soften the impact of the testimony. (Doc. No. 177, PgID 3281) The fact that the Government provisionally listed another FBI Agent (Agent Brenza, who investigated Petitioner's alleged link to the Calderone Organization) as a witness supports the Government's contention. Petitioner is essentially attempting to second guess trial counsel's strategy during trial.

In *Strickland*, the Supreme Court commented: "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The Supreme Court continued: "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

The record shows Petitioner's counsel cross-examined Agent Wonziak about Petitioner's connection to the Calderone Organization to attack the credibility of the evidence before the Government could strategically introduce and control the

direction of Agent Brenza's testimony in a manner that supported the Government's theory of the case. The Court finds that such cross-examination was a tactical decision by Petitioner's counsel, and a trial counsel's strategy cannot constitute ineffective assistance counsel. *See, e.g., United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970) ("decisions as to whether or not to call certain witnesses to the stand . . . are tactical determinations. Errors, even egregious ones, in this respect do not provide a basis for postconviction [sic] relief."). The effective assistance guarantee of the Sixth Amendment does not ensure that defendants receive perfect legal representation, but "that criminal defendants receive a fair trial." *Strickland*, 466 at 689. Petitioner has not met the first prong of *Strickland* on this claim.

### 2.   Failure to File a FRE 609(b) Motion to Impeach Broadnax

Petitioner claims his counsel was ineffective for failing to file a motion in limine notifying the Government and the Court that, pursuant to Federal Rule of Evidence 609(b), she intended to introduce evidence of Broadnax's two prior drug distribution convictions. (Doc. No. 169, PgID 3134). Petitioner argues that by failing to do so, his counsel was unable to accurately portray Broadnax's credibility or cross-examine him. *Id.* at 3140-41.

9

In *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990), the Sixth Circuit concluded that, according to Rule 609(a)(2), evidence of a witness's misdemeanor conviction is admissible only if the crime involved "dishonesty or false statement." In addition, Rule 609(b) forbids the impeachment of a witness's prior conviction "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). "Rule 609(b) creates, in effect, a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded." *United States v. Sims,* 588 F.2d 1145, 1150 (6th Cir. 1978). The Sixth Circuit also has held that "evidence of convictions more than ten years old should be admitted very rarely and only in exceptional and circumstances." *United States v. Sloman,* 909 F.2d 176, 181 (6th Cir. 1990) (internal quotations omitted). Finally, it is important to bear in mind that district courts have "broad discretion in determining whether to admit evidence of prior convictions." *U.S. v. Lochmondy*, 890 F.2d 817, 824 (6th Cir. 1989).

Broadnax was charged with possession of less than twenty-five grams of cocaine in 1983 and again either in 1983 or 1984, each of which constituted a felony for purposes of Rule 609. Petitioner failed to demonstrate Broadnax was convicted of those crimes, however, and even if he had done so, the Court notes

they would not have been admissible because more than 10 years would have passed since Broadnax was convicted and/or released from confinement on those crimes. Rule 609(b).  Although the Government conceded Broadnax had been convicted of a misdemeanor weapons charge in 1986 and a misdemeanor drug charge in 1989 (Doc. No. 177, PgID 3274-75), those misdemeanor charges are inadmissible pursuant to Rule 609(b) (as more than 10 years old) and Rule 609(a)(2) (because neither involves "dishonesty or false statement."). [1]

For the reasons stated above, the Court holds that the failure of Petitioner's counsel to file a motion in limine related to any of Broadnax's prior convictioins was not objectively unreasonable, nor does it support a finding that her performance was deficient or constituted ineffective assistance of counsel.

## 3.    Failure to Impeach Broadnax's Testimony

Petitioner claims his counsel's failure to impeach Broadnax's testimony regarding the needs of Broadnax's handicapped son substantially disadvantaged Petitioner at trial.  Petitioner also argues that Broadnax's testimony led the jury to

---

[1]The Court notes that the foregoing convictions would be admissible only if the "(1) probative value [of such convictions], supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).  The Court concludes, however, that the convictions would have little probative value and any probative value they may have had certainly would not  <u>substantially</u> outweigh the prejudicial value of them.

"believe that Broadnax was a first time offender who only sold cocaine in order to support his handicap[ped] son. This fallacious theory by the Government left an empathizing [sic] impression on the jury which counsel was entitled, but failed[,] to rebut." (Doc. No. 169, PgID 3144)

The Court concludes that Petitioner has not demonstrated that his counsel was ineffective. First, as the Court ruled previously, even if Petitioner's counsel had properly raised the issue of Broadnax's two misdemeanor convictions by filing a motion in limine, the Court would not have admitted the evidence. Second, contrary to Petitioner's implications, the trial record reveals that his counsel unsuccessfully attempted to introduce evidence of Broadnax's past criminal convictions on two separate occasions. (*See, e.g.,* Doc. No. 169, PgID 3130-31) Third, Petitioner's counsel was able to get Broadnax to concede on cross-examination that he could pay bills without drug trafficking, notwithstanding the demands of his son's disability. (Doc. No. 160, PgID 2275-89)

### 4.    Failure to Investigate Call 52

Petitioner claims his counsel allowed materially false testimony to contaminate the jury verdict when she failed to impeach Broadnax's testimony relating to Call 52. (Doc. No. 169, PgID 3109) Petitioner contends that a key part of Broadnax's testimony related to Call 52 (*i.e.*, Broadnax's testimony that he

retrieved five kilograms of cocaine in a box underneath the middle seat of Petitioner's minivan) was "physical[l]y and mathematical[ly]" impossible. *Id.* at 3110.  Petitioner also states that the type of drug and quantity referenced in Call 52 was pounds of marijuana, not kilograms of cocaine. The Government counters that, because "the dimensions of a pound of marijuana and a kilogram of cocaine are just not that different," attempting to impeach Broadnax about his testimony would have been unsuccessful. (Doc. No. 177, PgID 3282).

The Court is not persuaded by Petitioner's argument.  Although his counsel did not investigate the physical and mathematical dimensions of the space underneath the van seat, Petitioner fails to rebut the Government's argument that the physical proportions of a pound of marijuana and a kilogram of cocaine are very similar.  In other words, any attempt to impeach Broadnax in the manner Petitioner suggests would have been fruitless.  The Court also finds that Petitioner's counsel may have decided not to impeach Broadnax's testimony regarding Call 52 because of statements made by Petitioner to Agent Wozniak.  As the *Strickland* court stated, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."

13

*Id.* at 691 ("the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions").

Petitioner concedes that his counsel's strategy was to portray Broadnax as an "inherently uncredible [sic] witness and his testimony can not be believed beyond a reasonable doubt." (Doc. No. 169-1, PgID 3159) As Petitioner acknowledges, his counsel was successful in impeaching Broadnax's testimony on several occasions. Petitioner specifically admits his counsel was able to undermine Broadnax's credibility in five instances:

> (1) Evidence of [Broadnax's] wife not being prosecuted at the time Broadnax accepted and entered plea agreement; (2) Broadnax claim that wife was not involved, but evidence wife counting "thousands" for saving for a house although they both worked menial jobs; (3) Evidence of deceptive nature regarding sexual relationship with subordinate; (4) Ability to recollect, 'smoking weed'; and (5) Evidence of bias pertaining to downward departure in sentencing.

*Id.* Even after counsel successfully demonstrated that Broadnax's testimony was riddled with lies or inaccuracies, the jury apparently believed Broadnax's story when finding Petitioner guilty.

The Court also notes that Petitioner himself is inconsistent in discussing the dimensions of the purported box. On page seven of his 2255 Motion, he stated that the box measured 12x18 inches, but on page 53 of the 2255 Motion (and in his reply brief), he stated that the box measured 12x21 inches. Yet, neither of

Petitioner's purported measurements are supported by the dimensions offered at trial by Broadnax, Petitioner's counsel, or the Government's counsel. The trial transcript reveals that: (1) the Government described the box as being "about 18 inches" long and "about 21 inches" wide; (2) Petitioner's counsel described the box as being "substantially less than 18 inches" long and "less than a foot" wide; and (3) Broadnax agreed the box was "somewhere between 12 and 18 inches long" but did not note how wide it was. (Doc. No. 160, PgID 2395)

The Court concludes Petitioner has not satisfied his burden of demonstrating that his counsel rendered ineffective assistance for failing to investigate Call 52.

### 5.   Government's Vouching for Broadnax

Petitioner claims his counsel provided ineffective assistance by failing to object to the Government's "vouching" for Broadnax when the Government focused on Broadnax's contractual obligation to testify truthfully at trial. (Doc. No. 169, PgID 3163) During its closing argument, the Government proffered evidence that Broadnax received a plea deal in exchange for truthful testimony. (Doc. No. 163, PgID 2871-72)  The Government then stated that: (a) it had promised to file a motion with the Court to reduce Broadnax's sentence in exchange for truthful testimony; and (b) that motion had been made.  *Id.*

15

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). The test for improper vouching for a witness is whether the jury could reasonably believe the prosecutor was indicating a personal belief in the witness's credibility. *United States v. Causey,* 834 F.2d 1277, 1283 (6th Cir.1987).    In *Francis*, the Sixth Circuit explained that improper vouching generally involves either "blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis,* 170 F.3d at 550.  On the other hand, courts routinely permit a prosecutor to refer to the plea agreement of a testifying witness. *See, e.g., United States v. Renteria,* 106 F.3d 765, 767 (7th Cir. 1997).  And, the Sixth Circuit has held that a prosecutor may refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility. *Francis*, 170 F.3d at 550.

The Court finds that the Government did not engage in improper vouching as it relates to Broadnax's plea agreement.  As the Government correctly argues, in its closing argument, the Government attorney merely described the terms of

Broadnax's plea agreement, a practice the Sixth Circuit has held to be permissible. *Francis*, 170 F.3d at 550.  For the same reason, the Court concludes that any objection to the Government's statements by Petitioner's counsel would have been futile.  The Court holds that Petitioner's counsel was not ineffective for failing to object to the Government's statements regarding Broadnax's plea agreement.

### 6.   No Demonstration that Petitioner was Prejudiced

Even if Petitioner could satisfy the first prong of *Strickland*, he would have to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" in order to prevail on his 2255 motion. *Strickland*, 466 U.S. at 694.  The Court is not persuaded that the result of the proceeding would have been different, even if any or all of Petitioner's claims had any merit.

In this case, there was ample and concrete evidence of Petitoner's involvement in a conspiracy to distribute cocaine.  There were several recorded conversations in which Petitioner discussed drug trafficking activity, and those recordings were corroborated by Petitioner's confession to Agent Wozniak that he was engaging in drug trafficking.  Notwithstanding Petitioner's contentions that he was involved in marijuana distribution rather than cocaine distribution, those recordings and Petitioner's confession were sufficient to enable a jury to find him

guilty of conspiracy to distribute cocaine, especially when taken together with the testimony of Broadnax.

In addition, Petitioner consistently undermined his credibility. The jury heard that Petitioner initially denied participating on the calls that Agent Wozniak played for Petitioner, but the jury also heard that Petitioner subsequently admitted that it was his voice on some of the recordings. Petitioner also undermined his credibility when he claimed that his use of the phrases "whole one" and "5 of those" refered to a pound or five pounds of marijuana (rather than a kilogram or kilograms of cocaine), even though there was no evidence of marijuana trafficking in pound amounts presented at trial. Petitioner further damaged his credibility with his testimony regarding Broadnax's comment to Petitioner that Broadnax was "putting an extra G on his bill" because Petitioner changed his story. Petitioner first claimed Broadnax was referring to an ounce of marijuana for $100. When Agent Wozniak pointed out that a "G" usually referred to a $1,000, Petitioner changed his story to suggest Broadnax was talking about one pound of marijuana for $1,000. As a result, rather than contradicting the allegations against him, Petitioner's inconsistent and ever changing testimony served to corroborate Broadnax's testimony that Petitioner was his source for cocaine.

In light of the strength of the proofs, the Court finds that the shortcomings of Petitioner's counsel, if any, did not cause Petitioner to suffer any prejudice nor did it result in the proceedings becoming fundamentally unfair, such that "the result of the proceeding would have been different" "but for his counsel's unprofessional errors." *Id.*

### 7.   Conclusion

For the reasons set forth above, the Court denies Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.

### C.   Analysis Regarding Motion for Consideration of New Law

Petitioner seeks to supplement his 2255 Motion with the United States Supreme Court's 2014 decision in *Hinton v. Alabama*, 134 S.Ct. 1081 (2014). The *Hinton* court: (1) concluded that, in a death penalty case, defense counsel's failure to request additional funds to replace an inadequate expert amounted to deficient performance; and (2) remanded the matter to the state court to determine whether, absent such deficient performance, "the result of the proceeding would have been different." *Id.* at 1089.

In his Motion for Consideration of New Law, Petitioner argues that his counsel's failure to adequately investigate the dimensions of the minivan precluded Petitioner's ability to prove to the jury that Broadnax was lying about the cocaine

stashed under the seat of the minivan.  In essence, Petitioner reargues his claim that his counsel's failure to investigate Call 52 constituted ineffective assistance of counsel, but he does not explain how the *Hinton* decision buttresses his argument. The Court finds that the *Hinton* decision is factually distinguishable from the failure to investigate Call 52 ineffective assistance of counsel claim Petitioner raised in his 2255 Motion. As the Court has already addressed and denied Petitioner's claim regarding a failure to investigate Call 52, the Court need not address it again here.  The Court denies Petitioner's Motion for Consideration of Newly Promulgated Law.

## IV.   CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  In order to obtain a certificate of appealability, a defendant "must make a substantial showing of the denial of a constitutional right." *Slack v. Daniel*, 529 U.S. 473, 483 (2000); 28 U.S.C. § 2253(c)(2).   To demonstrate this denial, the defendant is required to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and

internal quotations omitted). In other words, when a district court rejects a defendant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir. 1997).

The Court concludes that, with respect to any of the grounds asserted in his 2255 motion, Petitioner has not shown (and cannot show) that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and internal quotations omitted). For the reasons stated above, the Court finds that the issues raised by Petitioner are without merit, and it will not issue Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons set forth above,

21

IT IS ORDERED that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Criminal Case No. 08-20130, Docket No. 169, filed November 19, 2012] is **DENIED.**

IT IS FURTHER ORDERED that Petitioner's Motion for Consideration of Newly Promulgated Law [Docket No. 180, filed April 8, 2014] is **DENIED.**

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Civil Case No. 12-15136] is **DISMISSED WITH PREJUDICE and designated as CLOSED.**

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

22